[957 NYS2d 380]

Janine Trezza, Respondent, v Dana Trezza et al., Defendants.
Oxford Health Plans et al., Nonparty Appellants.

Second Department, December 26, 2012

APPEARANCES OF COUNSEL

*Robinson & Cole LLP*, New York City (*Thomas J. Donlon* and *Linda L. Morkan* of counsel), for nonparty appellants.

*Bruce Montague & Partners*, Bayside (*Craig I. Gardy* of counsel), for respondent.

## OPINION OF THE COURT

DICKERSON, J.

In 2009, the legislature enacted General Obligations Law § 5-335 to protect a plaintiff who settles an action to recover damages for personal injuries from being subject to certain subrogation or reimbursement claims by health benefit providers. The statute provides that "[e]xcept where there is a statutory right of reimbursement," no party who enters into a settlement "shall be subject to a subrogation claim or claim for reimbursement by a benefit provider" with respect to those expenses "that have been *or are obligated to be paid or reimbursed by said benefit provider*" (General Obligations Law § 5-335 [a]). The issue we are called upon to determine on this appeal is whether General Obligations Law § 5-335 can bar a private insurer that provides health benefits through a Medicare Advantage plan (*see* 42 USC §§ 1395w-21—1395w-29) from seeking reimbursement for the expenses incurred in affording accident-related medical care to an enrollee who settles a personal injury action. For the reasons which follow, we conclude that General Obligations Law § 5-335, insofar as applied to Medicare Advantage organizations, is preempted by federal law because it restricts the contractual reimbursement rights to which those organizations are entitled pursuant to the provisions of Title XVIII of the Social Security Act, as amended (42 USC § 1395 *et seq.*), commonly known as the Medicare Act (*see generally Heckler v Ringer*, 466 US 602, 605 [1984]).

## Factual and Procedural Background

On March 20, 2005, the plaintiff was injured in an automobile accident. She was a passenger in a vehicle operated by her husband, the defendant Dana Trezza, when that vehicle collided with a second vehicle. The plaintiff allegedly sustained serious injuries as a result of the accident. The nonparty appellant

Oxford Health Plans (hereinafter Oxford), the plaintiff's Medicare secondary payer organization, paid $37,787.64 in medical expenses for treatment of the plaintiff's accident-related injuries.

The plaintiff commenced this personal injury action on or about October 24, 2007, against her husband and the owners and operator of the second vehicle. Ultimately, the plaintiff received a settlement of $75,000, consisting, in effect, of the $25,000 personal injury protection insurance policy limit of the policy covering the vehicle in which she was a passenger, and the $50,000 policy limit of the policy covering the second vehicle.

By letter dated September 10, 2008, the nonparty appellant the Rawlings Company, LLC (hereinafter Rawlings), on behalf of Oxford (hereinafter together the Oxford parties), contacted the plaintiff's attorney to assert a claim for reimbursement for amounts Oxford had paid for the plaintiff's accident-related medical care. As of June 29, 2010, Rawlings claimed that Oxford was entitled to reimbursement of $37,787.64.

By order to show cause dated October 9, 2010, the plaintiff moved to extinguish Oxford's purported lien and/or claim for reimbursement. The plaintiff asserted that, pursuant to General Obligations Law § 5-335, there is no right to reimbursement or subrogation for medical insurance providers such as Oxford. General Obligations Law § 5-335 provides, in pertinent part,

> "When a plaintiff settles with one or more defendants in an action for personal injuries, medical, dental, or podiatric malpractice, or wrongful death, it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by a benefit provider, except for those payments as to which there is a statutory right of reimbursement. By entering into any such settlement, a plaintiff shall not be deemed to have taken an action in derogation of any nonstatutory right of any benefit provider that paid or is obligated to pay those losses or expenses; nor shall a plaintiff's entry into such settlement constitute a violation of any contract between the plaintiff and such benefit provider.

> "Except where there is a statutory right of reimbursement, no party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said benefit provider" (General Obligations Law § 5-335 [a]).

The plaintiff claimed that any contractual right to reimbursement Oxford may have had was extinguished when General Obligations Law § 5-335 went into effect on November 12, 2009.

The Oxford parties opposed the plaintiff's motion. They reiterated that Oxford had paid $37,787.64 for medical expenses incurred by the plaintiff allegedly arising out of her automobile accident. The Oxford parties asserted that Oxford had a statutory right to reimbursement under 42 USC §§ 1395y and 1395w-22, and that General Obligations Law § 5-335 expressly recognizes that statutory rights of reimbursement, such as those under the federal law governing Medicare, are not subject to extinguishment. The Oxford parties also maintained that it was unnecessary for them to seek a declaration that General Obligations Law § 5-335 is preempted by federal law, because that section provides for reimbursements where a statutory right thereto exists.

In support of their position that they had a statutory right to reimbursement, the Oxford parties relied on language in Oxford's contract with the plaintiff which stated, in pertinent part:

> "Who Pays First?

> "As a Member, you are always entitled to receive Covered Services through the AARP MedicareComplete plan. Medicare law, however, gives us or our designee the right to recover payments from certain third party insurance companies or from you, if you were paid by a third party. Because of this, we may ask you for information about other insurance you may have. If you have other insurance, you can help us obtain payment from the other insurer by promptly providing the requested information.

> "If any no-fault or any liability insurance is avail-

able to you, benefits under that plan must be applied to the costs of health care covered by that plan. Where we have provided benefits, and a judgment or settlement is made with a no-fault or liability insurer, you must reimburse us or our designee (entity or person selected for this purpose) to the extent of your medical expenses."

The Oxford parties asserted that the plaintiff acknowledged that she had the obligation to reimburse Medicare since she conceded that General Obligations Law § 5-335 did not extinguish claims made pursuant to a valid statutory right of reimbursement. The Oxford Parties claimed that the plaintiff had the same obligation as to Oxford, since it was a Medicare+Choice organization, as defined at 42 USC § 1395w-28 (a) (1) ("The term 'Medicare+Choice organization' means a public or private entity that is certified under section 1395w-26 of this title as meeting the requirements and standards of this part for such an organization"). The Oxford parties asserted that Oxford was entitled to its statutory right of reimbursement pursuant to 42 USC §§ 1395y, 1395w-22, and 1395mm (e) (4).

In reply, the plaintiff first asserted that General Obligations Law § 5-335 was not preempted by federal law. The plaintiff claimed that, while General Obligations Law § 5-335 does specifically recognize that statutory rights of reimbursement are not subject to elimination, Oxford did not have a statutory right to reimbursement. According to the plaintiff, the federal Medicare statute did not confer any affirmative statutory right to reimbursement. Rather, any such right was created by the insurance contract itself, and therefore Oxford had a contractual, not a statutory, right to reimbursement. She argued that contractual rights would be extinguished by General Obligations Law § 5-335.

Further, the plaintiff asserted that there was no evidence that her settlement included compensation for health care services she received, and, pursuant to General Obligations Law § 5-335, her settlement was conclusively presumed not to include compensation for the cost of health care services. Therefore, according to the plaintiff, her settlement did not include compensation to her for health care services from which Oxford could seek reimbursement.

### The Order Appealed From

In an order dated June 23, 2011, the Supreme Court, Kings County (Kramer, J.), granted the plaintiff's motion to extinguish

the purported lien and/or claim for reimbursement (*Trezza v Trezza*, 32 Misc 3d 1209[A], 2011 NY Slip Op 51237[U] [Sup Ct, Kings County 2011]). Relying, in effect, on the language in 42 USC § 1395w-22 (a) (4), set forth in the analysis below, the Supreme Court stated that the "Medicare Act permits, but does not require, HMO insurers 'to contract for subrogation rights' " (*Trezza v Trezza*, 32 Misc 3d 1209[A], 2011 NY Slip Op 51237[U], *2 [2011], quoting *Nott v Aetna U.S. Healthcare, Inc.*, 303 F Supp 2d 565, 571 [ED Pa 2004]).

The Supreme Court then observed that General Obligations Law § 5-335 (a) creates a conclusive presumption that settlements in personal injury actions do not include compensation for the cost of health care services except where there exists a statutory right of reimbursement (*see Trezza v Trezza*, 32 Misc 3d 1209[A], 2011 NY Slip Op 51237[U], *2 [2011]). With the exception of the circumstance where there is a statutory right of reimbursement, "a benefit provider has 'no lien or right of subrogation or reimbursement against any such settling party, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said benefit provider' " (*id.*, quoting General Obligations Law § 5-335 [a]).

The Supreme Court determined that the threshold question was whether the Medicare Act preempted General Obligations Law § 5-335 (*see Trezza v Trezza*, 32 Misc 3d 1209[A], 2011 NY Slip Op 51237[U], *2 [2011]). The Supreme Court stated that the "central inquiry is whether Congress intended to create . . . a private cause of action when passing the Medicare Act" (*id.* [internal quotation marks omitted]). The Supreme Court then observed that courts "have held that because the Medicare Act did not establish a federal scheme for the civil enforcement of HMO subrogation rights, it did not create a private cause of action" (*id.*, citing *Nott v Aetna U.S. Healthcare, Inc.*, 303 F Supp 2d at 570, and *Care Choices HMO v Engstrom*, 330 F3d 786, 789 [6th Cir 2003]). The court concluded that the Medicare Act "does not create a statutory right of reimbursement; instead, it allows HMOs to include subrogation rights in its contracts with beneficiaries" (*Trezza v Trezza*, 32 Misc 3d 1209[A], 2011 NY Slip Op 51237[U], *2 [2011]). Accordingly, the court determined that, "[b]ecause 'the Medicare Act permits, but does not mandate, HMO insurers to contract for subrogation rights' ([*Nott v Aetna U.S. Healthcare, Inc.*, 303 F Supp 2d] at 571), subrogation in this context remains a state contract law issue" (*Trezza v Trezza*, 32 Misc 3d 1209[A], 2011 NY Slip Op 51237[U], *2 [2011]).

The Supreme Court concluded that, because General Obligations Law § 5-335 (a) creates a conclusive presumption that a settlement in a personal injury action does not include compensation for health care services, and because that section further expressly states that

> "[e]xcept where there is a statutory right of reimbursement, no party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party,"

Oxford had no lien or subrogation claim for medical expenses against the plaintiff (*see Trezza v Trezza*, 32 Misc 3d 1209[A], 2011 NY Slip Op 51237[U], *3 [2011]).

## Analysis

General Obligations Law § 5-335 was enacted on November 12, 2009, and became effective immediately (*see* L 2009, ch 494, part F, §§ 8-9). It provides, in pertinent part, that

> "[w]hen a plaintiff settles with one or more defendants in an action for personal injuries . . . it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by a benefit provider, except for those payments as to which there is a statutory right of reimbursement" (General Obligations Law § 5-335 [a]).

It further provides that

> "[e]xcept where there is a statutory right of reimbursement, no party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said benefit provider" (*id.*).

As stated in a letter dated November 13, 2009, from the Office of the Mayor of the City of New York to David Paterson, then the Governor of New York State, recommending approval

of the Act which included the addition of General Obligations Law § 5-335, the enactment of that section would serve to protect the parties to personal injury or wrongful death actions "from being subject, following resolution of the action, to a subrogation claim or claim for reimbursement by a health benefit provider" (Bill Jacket, L 2009, ch 494 at 19). Thus, "[p]assage of the bill would prevent concerns about post-settlement subrogation or reimbursement claims from discouraging litigants from settling personal injury claims" (*id.*).

The plaintiff here participated in Oxford's Medicare+Choice program, authorized under Part C of the Medicare Act (*see* 42 USC §§ 1395w-21—1395w-29).

> "In 1997, Congress enacted part C of the Medicare Act authorizing the Centers for Medicare & Medicaid Services (CMS), an agency within [the Department of Health and Human Services], to contract with private managed health care organizations to provide individuals with the Medicare benefits they would be entitled to receive under Part A (hospital services) and Part B to [sic] (outpatient services) of the Act" (*Cotton v StarCare Med. Group, Inc.*, 183 Cal App 4th 437, 448-449, 107 Cal Rptr 3d 767, 776 [4th Dist 2010], citing 42 USC § 1395w-21 *et seq.*).

"Initially called the Medicare+Choice program, Part C was later renamed Medicare Advantage" (*Cotton v StarCare Med. Group, Inc.*, 183 Cal App 4th at 449, 107 Cal Rptr 3d at 776), although it appears that the names continue to be employed interchangeably.

Part C provides, inter alia:

> "Organization as secondary payer
>
> "Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y (b) (2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> "(A) the insurance carrier, employer, or other entity

which under such law, plan, or policy is to pay for the provision of such services, or

"(B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services" (42 USC § 1395w-22 [a] [4]).

It is clear that Part C permits, but does not require, Medicare Advantage organizations to create a right of reimbursement for themselves in their insurance agreements with insureds covered under Medicare. This conclusion is reinforced by considering other provisions of the Medicare Act which provide for mandatory reimbursement in other contexts (see 42 USC § 1395y [b] [2] [B]). Thus, there is no statutory right to reimbursement in favor of Medicare Advantage insurers such as Oxford. Instead, Part C only furnishes statutory authorization for insurers such as Oxford to include reimbursement provisions in their agreements with enrollees.

In the absence of a statutory right of reimbursement, General Obligations Law § 5-335 would seem to apply and effectively bar Oxford from recovering any part of the funds the plaintiff received in settling her personal injury claims with the defendants as reimbursement for the cost of health care services paid for by Oxford.

However, as did the Supreme Court, we must consider any preemptive effect the Medicare Act may have on General Obligations Law § 5-335. This is an issue of first impression before this Court.

"Preemption analysis begins, as always, with reference to the well-familiar Supremacy Clause of the United States Constitution, which provides that federal laws 'shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding' " (People v First Am. Corp., 18 NY3d 173, 179 [2011], cert denied sub nom. CoreLogic, Inc. v Schneiderman, 566 US —, 132 S Ct 1929 [2012], quoting US Const, art VI, cl 2).

"Under the doctrine of federal preemption, Congress may preempt state laws, either expressly or impliedly" (Sharabani v Simon Prop. Group, Inc., 96 AD3d 24, 28 [2012], citing Jones v Rath Packing Co., 430 US 519, 525 [1977]). "Federal preemption of state laws generally can occur in three ways: 'where

Congress has expressly preempted state law, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or where federal law conflicts with state law' " (*Sharabani v Simon Prop. Group, Inc.*, 96 AD3d at 28, quoting *Wachovia Bank, N.A. v Burke,* 414 F3d 305, 313 [2d Cir 2005], *cert denied* 550 US 913 [2007]; *see Barnett Bank of Marion Cty., N. A. v Nelson,* 517 US 25, 31 [1996]). "In determining whether federal law preempts state law, the United States Supreme Court has instructed that a court's 'sole task is to ascertain the intent of Congress' " (*People v First Am. Corp.,* 18 NY3d at 179, quoting *California Fed. Sav. & Loan Assn. v Guerra,* 479 US 272, 280 [1987]).

As noted above, Congress enacted Part C of the Medicare Act in 1997. "The 1997 law contained a preemption clause barring state laws and regulations 'inconsistent' with the standards issued by CMS and all state standards relating to four specific areas" (*Cotton v StarCare Med. Group, Inc.,* 183 Cal App 4th at 449, 107 Cal Rptr 3d at 776, quoting 69 Fed Reg 46866, 46913 [2004]).

In the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Congress replaced the limited preemption provision with the following comprehensive preemption provision: "The standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under [Part C]" (42 USC § 1395w-26 [b] [3]). This provision took effect on the date of the enactment of the Act, December 8, 2003.

According to the House of Representatives Report which accompanied the 2003 legislation, Congress intended the amendment to "clarif[y] that the [Medicare Advantage] program is a federal program operated under Federal rules" (HR Rep 391, 108th Cong, 1st Sess at 557, reprinted in 2003 US Code Cong & Admin News at 1926). The report continued, "State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency. There has been some confusion in recent court cases" (*id.*).

The term "standards," as employed in the preemption provision set forth in 42 USC § 1395w-26 (b) (3), is not defined in the Medicare Act. However, "a 'standard' within the meaning of the preemption provision is a statutory provision or a regulation

promulgated under the Act and published in the Code of Federal Regulations" (*Do Sung Uhm v Humana, Inc.*, 620 F3d 1134, 1148 n 20 [9th Cir 2010]; *see New York City Health & Hosps. Corp. v WellCare of N.Y., Inc.*, 801 F Supp 2d 126, 140 [SD NY 2011]; *Medical Card Sys. v Equipo Pro Convalecencia*, 587 F Supp 2d 384, 387 [D PR 2008]). Thus, the term "standards" as used in 42 USC § 1395w-26 (b) (3) refers to both statutory provisions and regulations promulgated under the Act and published in the CFR.

Under 42 USC § 1395w-26 (b) (1), "[t]he Secretary shall establish by regulation other standards (not described in subsection (a) of this section) for Medicare+Choice organizations and plans consistent with, and to carry out, this part [Part C]. The Secretary shall publish such regulations by June 1, 1998." This enabling provision authorized the Secretary to promulgate regulations to carry out Part C, and to publish them in the CFR.

At 42 CFR 422.108, entitled "Medicare secondary payer (MSP) procedures," regulations of the Centers for Medicare & Medicaid Services promulgated pursuant to the foregoing enabling provision describe the procedures to be employed by Medicare Advantage organizations in billing for covered Medicare services for which Medicare is not the primary payer. Under 42 CFR 422.108 (f): "Consistent with § 422.402 concerning the Federal preemption of State law, the rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to [Medicare Advantage] plans." That subdivision further states, "A State cannot take away [a Medicare Advantage] organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer" (42 CFR 422.108 [f]).

Indeed, Part C itself states that, "[n]otwithstanding any other provision of law," Medicare Advantage organizations may charge "such individual to the extent that the individual has been paid under such law, plan, or policy for such services" (42 USC § 1395w-22 [a] [4] [B]).

Thus, the Medicare Act provides that Medicare Advantage organizations may create a right of reimbursement for themselves in their insurance agreements with Medicare insureds. Moreover, "[t]he standards established under [Part C] shall supersede any State law or regulation (other than State licens-

ing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under [Part C]" (42 USC § 1395w-26 [b] [3]), and "[a] State cannot take away [a Medicare Advantage] organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer" (42 CFR 422.108 [f]).

Yet General Obligations Law § 5-335 would prohibit Medicare Advantage organizations from exercising the contractual right to reimbursement in that it would constrain contractual reimbursement rights where the insured entered into a personal injury settlement. In other words, General Obligations Law § 5-335, which, insofar as at issue here, clearly does not constitute a licensing law or a law relating to plan solvency, would, in the context of such personal injury settlements, "take away [a Medicare Advantage] organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer" in contravention of the federal regulations enabled by 42 USC § 1395w-26 (b) (1) (42 CFR 422.108 [f]).

Based on the express preemption provision set forth in 42 USC § 1395w-26 (b) (3), as well as the regulations set forth in 42 CFR 422.108 (f), we hold that General Obligations Law § 5-335, insofar as applied to Medicare Advantage organizations under Part C, is preempted by federal law since it would impermissibly constrain contractual reimbursement rights authorized under the "Organization as secondary payer" provisions of the Medicare Act (see 42 USC § 1395w-26 [b] [3]; 42 CFR 422.108 [f]; *Potts v Rawlings Co., LLC*, 2012 WL 4364451, 2012 US Dist LEXIS 137802 [SD NY, Sept. 25, 2012, No. 11 Civ. 9071 (JPO)]; *see also Phillips v Kaiser Found. Health Plan, Inc.*, 2011 WL 3047475, \*6, 2011 US Dist LEXIS 80456, \*20-21 [ND Cal, July 25, 2011, No. C 11 02326 CRB] ["The Medicare Act contains an expansive express preemption provision (and) prohibits states from limiting (secondary payer) rights" (citation omitted)]; *cf. Do Sung Uhm v Humana, Inc.*, 620 F3d at 1148-1153 [in considering the preemption provision of Medicare Part D, which incorporates the express preemption provision in Part C, the Ninth Circuit concluded that the statute preempted state consumer protection claims and fraud common-law claims]). Moreover, we agree with the conclusion expressed most

recently in a case from the United States District Court for the Southern District of New York that this is so "[w]hether or not there is a private right of action for [Medicare Advantage] organizations" (*Potts v Rawlings Co., LLC*, 2012 WL 4364451, *10, 2012 US Dist LEXIS 137802, *36 [2012]).

Thus, because General Obligations Law § 5-335 is expressly preempted by the Medicare Act, the Supreme Court erred in granting the plaintiff's motion to extinguish the purported lien and/or claim for reimbursement based on that section.

In light of our determination, we need not address the Oxford parties' remaining contentions.

Accordingly, the order is reversed, on the law, and the plaintiff's motion to extinguish a purported lien and/or claim for reimbursement is denied.

FLORIO, J.P., SGROI and MILLER, JJ., concur.

Ordered that the order is reversed, on the law, with costs, and the plaintiff's motion to extinguish a purported lien and/or claim for reimbursement is denied.